## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is entered into by and between Securitas Security Services USA, Inc. ("Employer") and Rudy Cope ("Employee"). The term "Party" or "Parties" as used herein shall refer to Employer, Employee, or both, as may be appropriate.

1. **Recitals.** This Agreement is made with reference to the following facts:

    (a) On or about February 22, 2022, Employee filed a lawsuit against Employer, (the "Defendant"), which is pending as *Rudy Cope v. Securitas Security Services USA, Inc.*, in the United States District Court for the Southern District of Indiana, Case No.: 1:22-cv-00363-TWP-DLP (the "Action"). In the Action, Employee alleges that Employer failed to pay overtime and failed to pay the correct wage rate all in violation of the Fair Labor Standards Act ("FLSA") and Indiana's Wage, Hour and Benefits Laws.

    (b) There has been no determination on the merits of the Action but, in order to avoid additional cost and the uncertainty of litigation and/or arbitration, Employee and Employer have agreed, subject to the provisions in Paragraph 5 below, to resolve any and all claims, known and unknown, asserted and unasserted, which Employee has or may have against Employer, its direct and indirect parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, reinsurers, representatives, successors and assigns, and their current and former employees, attorneys, clients at whose job sites Employee worked while employed by Employer, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities, and any heirs, executors, administrators, successors or assigns (collectively referred to throughout the remainder of this Agreement as "Releasees") as of the date of execution of this Agreement.

2. **Consideration; Indemnification for Tax Consequences.**

    (a) In consideration for Employee signing this Agreement and complying with its terms, Employer agrees to pay the total gross sum of FIFTEEN THOUSAND DOLLARS ($15,000.00) (the "Settlement Payment"), to be paid as follows:

    (1) One check for alleged unpaid wages made payable to "Rudy Cope" in the amount of TEN THOUSAND DOLLARS ($10,000.00), less applicable payroll/tax withholdings, for which Employer shall issue an IRS Form W-2 to Employee;

    (2) One check for alleged attorneys' fees and costs made payable to Goodin Abernathy LLP, LLC ("Employee's Counsel") in the amount of FIVE THOUSAND DOLLARS ($5,000.00), for which Employer shall issue an IRS Form 1099-MISC to Employee and Employee's Counsel;

1

(b)     Employee agrees that Employee is responsible for all applicable taxes, if any, as a result of the receipt of these monies in Paragraph 2. Employee understands and agrees Employer is providing Employee with no representations regarding tax obligations or consequences that may arise from this Agreement. Employee, for Employee and Employee's dependents, successors, assigns, heirs, executors and administrators (and Employee's legal representatives of every kind), agrees to indemnify and hold the Releasees harmless for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Releasees in connection with such governmental authority's determination that Employer or any of the other Releasees was required to, but failed to, withhold or report the correct amount of income or employment taxes from the payments made to Employee or Employee's Counsel pursuant to Paragraph 2(a) of this Agreement. Employee agrees that Employee shall indemnify the Releasees for the full amount of such liability within thirty (30) days after receipt of notice from Employer or any of the other Releasees of the assessment of such taxes, penalties, or interest.

(c)     The settlement payments set forth in this paragraph will be delivered to Employee's Counsel, Chip Clark, at Goodin Abernathy LLP, 301 East 38th Street, Indianapolis, Indiana 46205.

3.     **No Consideration Absent Execution of this Agreement.** Employee understands and agrees that Employee would not receive the monies and/or benefits specified in Paragraph 2 above, except for Employee's timely execution of this Agreement and the fulfillment of the promises contained herein.

4.     **Court Approval; Dismissal of Action; Disbursal of Settlement Funds.**

(a)     This Agreement is subject to approval of the Court. The Parties agree to cooperate and take all steps necessary and appropriate to obtain approval of this settlement and to dismiss this action with prejudice upon approval of the terms and conditions of the Agreement. In the event this Agreement is not approved by the Court, Employer shall not be obligated to make any payments under this Agreement. A failure of the Court to approve any material condition of this Agreement shall render the entire Agreement voidable and unenforceable as to all Parties herein at the option of the party adversely affected thereby. However, neither party may void the Agreement based on the Court's non-approval of any request for attorneys' fees, expenses, or costs, or based on the award of any lower amount of attorneys' fees, expenses, or costs. The Court's failure to approve Employee's fee request shall not render the Agreement unenforceable. If this Agreement is not approved or voided, this Agreement shall have no force or effect; all negotiations, statements and proceedings related thereto shall be without prejudice to the rights of any party, all of whom shall be restored to their respective positions in the lawsuit prior to the settlement; and neither this Agreement nor any ancillary documents, actions or filings shall be admissible or offered into evidence in the lawsuit or any other action for any purpose.

(b)     The settlement checks in Paragraph 2(a) will be sent to Employee's



Counsel within ten (10) days after the latest of the following have occurred: (i) counsel for Employer receives a copy of the Agreement signed by Employee; (ii) counsel for Employer receives an executed W-9 Form from Employee and his counsel; (iii) Court approval of the settlement; (iv) dismissal of Action with prejudice; and (iv) the revocation period following the signing of this Agreement has expired.

5. **General Release; Claims Not Released and Related Provisions.**

(a) **General Release of All Claims.** Employee and Employee's heirs, executors, administrators, successors, and assigns knowingly and voluntarily release and forever discharge Releasees, of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the following, as amended:

- **The Fair Labor Standards Act;**
- **Title VII of the Civil Rights Act of 1964;**
- **Sections 1981 through 1988 of Title 42 of the United States Code;**
- **The Employee Retirement Income Security Act of 1974 ("ERISA");**
- **The Internal Revenue Code of 1986;**
- **The Immigration Reform and Control Act;**
- **The Americans with Disabilities Act of 1990;**
- **The Age Discrimination in Employment Act of 1967 ("ADEA");**
- **The Worker Adjustment and Retraining Notification Act;**
- **The Fair Credit Reporting Act;**
- **The Family and Medical Leave Act;**
- **The Equal Pay Act;**
- **The Genetic Information Nondiscrimination Act of 2008;**
- **All Applicable Indiana Wage, Hour and Benefits Laws;**
- any other federal, state, or local law, rule, regulation, or ordinance;

- any public policy, contract, tort, or common law; or

- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

(b) **Claims Not Released.** Employee is not waiving any rights Employee may have to: (i) Employee's own vested or accrued employee benefits under Employer's qualified retirement benefit plans; (ii) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (iii) pursue claims which by law cannot be waived by signing this Agreement; and (iv) enforce this Agreement.

(c) **Governmental Agencies.** Nothing in this Agreement prohibits, prevents, or otherwise limits Employee from filing a charge or complaint with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency (*e.g.*, EEOC, NLRB, SEC) or in any legislative or judicial proceeding nor does anything in this Agreement preclude, prohibit or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with or report unlawful conduct to federal, state, or local officials for investigation or participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

(d) **Collective/Class Action Waiver.** If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party.

6. **Acknowledgments and Affirmations.**

(a) Employee confirms that prior to the execution of this Agreement, Employee has not revealed its terms to any third parties other than Employee's counsel and/or spouse.

(b) Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Employer, except the Action which is being dismissed with prejudice. Nothing in this Agreement or these Affirmations is intended to impair Employee's rights under whistleblower laws or cause Employee to disclose Employee's participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

(c) Except as alleged in the Action and which claims are expressly released in Paragraph 5(a) above, Employee affirms that Employee has reported all hours worked as of the date Employee signs this Agreement and has been paid and/or has received all compensation,



wages, bonuses, commissions, paid sick leave, predictability pay, and/or benefits which are due and payable as of the date Employee signs this Agreement and Employee has been reimbursed for all necessary expenses or losses incurred by Employee within the scope of Employee's employment. Employee further affirms that Employee has submitted expense reports for all necessary expenses or losses incurred by Employee within the scope of Employee's employment. Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act and state and local leave and disability accommodation laws.

(d) Employee further affirms that Employee has no known workplace injuries or occupational diseases.

(e) Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law. Under the federal Defend Trade Secrets Act of 2016, Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Employee's attorney in relation to a lawsuit against Employer for retaliation against Employee for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

(f) Employee further affirms that Employee has not reported internally to Employer any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud, and Employee has not been retaliated against for reporting any such allegations internally to Employer, except as alleged in the Action and which claims are expressly released in Paragraph 5(a) above.

(g) Employee affirms that all of Employer's decisions regarding Employee's pay and benefits through the Execution Date of this Agreement were not discriminatory based on age, disability, race, color, sex, religion, national origin, or any other classification protected by law.

(h) Employee and Employer acknowledge Employee's rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights.

7. **Medicare Secondary Payer Rules.** As a term of this Agreement, the parties have fully considered Medicare's interests pursuant to the Medicare Secondary Payer rules. In doing so, Employee affirms that as of the date Employee signs this Agreement, Employee is not Medicare eligible (i.e., is not 65 years of age or older; is not suffering from end stage renal



failure; has not received Social Security Disability Insurance benefits for 24 months or longer, etc.). Nonetheless, if the Centers for Medicare & Medicaid Services (CMS) (this term includes any related agency representing Medicare's interests) determines that Medicare has an interest in the payment to Employee under this settlement, Employee agrees to (i) indemnify, defend and hold Releasees harmless from any action by CMS relating to medical expenses of Employee, (ii) reasonably cooperate with Releasees upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Employee is required to indemnify Releasees under this paragraph, and (iii) waive any and all future actions against Releasees for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

8. **Governing Law and Interpretation.** This Agreement shall be governed and conformed in accordance with the laws of the State of Indiana without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

9. **Non-Disparagement; Non-Publicity.**

(a) Employee agrees to refrain from making statements that are disparaging, demeaning, or defamatory about Releasees, or Releasees' customers, suppliers, or vendors, including but not limited to communications on social media websites such as Facebook, Twitter, LinkedIn, or Glassdoor on blogs, by text or email or other electronic means. This provision does not prohibit Employee from making truthful statements about the terms or conditions of Employee's employment, or from exercising Employee's rights under the National Labor Relations Act, government whistleblower programs, or whistleblowing statutes or regulations.

(b) Employee agrees not to publicize the existence or terms of this Agreement, or information regarding the underlying facts leading up to the making of this Agreement, to any newspaper, magazine, radio or television station, internet site, blog, social media application, present or former employees of Employer, or any other persons, except to Employee's attorney, financial advisor, and spouse, to the Court as necessary to obtain approval of the Agreement, or if required by law or subpoena.

10. **Non-Admission of Wrongdoing.** The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

11. **Amendment**. This Agreement may not be modified, altered or changed except in

writing and signed by both Parties wherein specific reference is made to this Agreement.

12. **Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except for any arbitration, intellectual property, noncompete, restrictive covenant, non-solicitation, nondisclosure, or confidentiality agreements between Employer and Employee, which shall remain in full force and effect according to their terms. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

13. **Counterparts and Signatures.** This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument. A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail will have the same effect as the original signature.

14. **Mutual Negotiation.** This Agreement was the result of negotiations between the Parties and their respective counsel. In the event of vagueness, ambiguity, or uncertainty, this Settlement Agreement shall not be construed against the Party preparing it but shall be construed as if both Parties prepared it jointly.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY OR REPRESENTATIVE OF EMPLOYEE'S CHOICE PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT.**

**EMPLOYEE MAY REVOKE THIS AGREEMENT FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY ON WHICH EMPLOYEE SIGNS OR ENTERS INTO THIS AGREEMENT AND THE AGREEMENT IS NOT ENFORCEABLE UNTIL THE REVOCATION PERIOD HAS EXPIRED. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO: ATTN: ANDY HRONEK; SECURITAS SECURITY SERVICES USA, INC.; LEGAL DEPARTMENT, 4330 PARK TERRACE DRVIE; WESTLAKE VILLAGE, CA, 91361; ANDY.HRONEK@SECURITASINC.COM; AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR AGREEMENT AND GENERAL RELEASE." THE REVOCATION MUST BE RECEIVED BY ANDY HRONEK; SECURITAS SECURITY SERVICES USA, INC.; LEGAL DEPARTMENT; 4330 PARK TERRACE DRIVE; WESTLAKE VILLAGE, CA, 91361; ANDY.HRONEK@SECURITASINC.COM, WITHIN SEVEN (7) CALENDAR DAYS AFTER EMPLOYEE SIGNS OR ENTERS INTO THIS AGREEMENT.**

**EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RESTART OR AFFECT IN ANY MANNER**



THE ORIGINAL UP TO TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.

EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.

The parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**RUDY COPE**                                         **SECURITAS SECURITY SERVICES USA, INC.**

By: _[signature]_                                     By: _____
                                                       ANDY HRONEK
                                                       Assistant General Counsel, Legal Department

Date  05/24/2022                                       Date: _____

8